O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JESUS G. ESTRELLA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-775 |
| | § | |
| ALDINE INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending is Defendant Aldine Independent School District's Motion for Summary Judgment (Document No. 25) and Motion to Strike Affidavits (Document No. 30).   After carefully considering the motions, response, reply, and the applicable law, the Court concludes as follows:

I.  Background

Plaintiff Jesus G. Estrella ("Estrella"), who is Hispanic, alleges that Defendant Aldine Independent School District ("AISD") violated Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), by discriminating against him based on his national origin and retaliating against him for engaging in protected activity.  Specifically, Estrella alleges that he was excluded from job openings and promotions, "had significant job responsibilities

removed to his detriment," and ultimately was terminated, all because he was Hispanic.  Document No. 14 ¶ 10.  Estrella further complains that when he "asserted that rights protected by federal antidiscrimination statutes had been violated by defendant, defendant engaged in retaliatory action against him in violation of Title VII. . . ."  Id.

AISD hired Estrella as a patrol officer in 1992, and he remained in that position throughout his employment, which ended in 2003.  On or about the afternoon of April 3, 2003, Estrella was driving home in his patrol vehicle when he stopped at a carwash after noticing two Hispanic females.  When the older female approached the patrol vehicle, Estrella asked her if he could speak with the younger female, who was in the carwash bay.  The older female walked away and called the younger female over to the patrol vehicle.  When the younger female complied, Estrella asked her for her name, explained that she looked familiar, and inquired whether she attended any AISD schools.  The younger female explained that she was a student at Nimitz, an AISD school, and Estrella then asked her age.  Whether the student stated her age as 16 or 18 is unclear, but Estrella gave her his personal cell phone number and asked her to call him later.  *See* Document No. 25 ex. 1, at 111; ex. 4.

After this incident, the student and the older female, who was the student's mother, complained to one Lieutenant Stamper, who

notified AISD chief of police Ike Fluellen ("Fluellen").  According to Fluellen, Estrella initially denied the incident, but then admitted he had given the student his phone number when confronted with the actual paper he had given to her.  *See* Document No. 25 ex. 2 ¶¶ 7-8.  Under AISD policy, employees are prohibited from dating or courting students regardless of the student's age or whether the student or his/her parent consents.  *See* <u>id.</u> ex. 5.  Estrella chose to resign rather than be terminated, and Fluellen accepted Estrella's resignation on April 8, 2003.  *See* <u>id.</u> ex. 2 ¶ 9.

In May, 2003, Estrella filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and eventually received a notice of right to sue.  *See* <u>id.</u> exs. 6-7.  He then filed the instant action, seeking damages, interest, costs, and attorney's fees.  AISD now moves for summary judgment and to strike part of Estrella's summary judgment evidence.

## II.  <u>Summary Judgment Standard of Review</u>

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party must "demonstrate

3

the absence of a genuine issue of material fact." <u>Celotex Corp. v.</u> <u>Catrett</u>, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. <u>Id.</u> "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." <u>Id.</u>

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u> <u>Corp.</u>, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. <u>Kelley v. Price-</u> <u>Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing <u>Matsushita</u>, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." <u>Id.</u> Even if the standards of Rule

4

56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

### III.  <u>Discussion</u>

A.  <u>Motion to Strike</u>

AISD objects to and moves to strike the affidavits of Alfred Herdon and Gerald Trent Eagleton submitted in opposition to AISD's motion for summary judgment.  These affidavits, which are almost identical, contain conclusory statements such as "Defendant pretextually terminated Mr. Estrella, on account of his national origin, in order to replace him with persons outside his protected category."  Document No. 27, Herdon Aff.; Eagleton Aff.  The affidavits then purport to detail discrimination against Estrella in the first person, as if the affiants *were* Estrella.  *See* <u>id.</u>[1] Furthermore, many of the statements in the affidavits contain inadmissible hearsay, involve time barred events, are irrelevant to Estrella's claims, or are contradicted by Estrella's deposition testimony.  For the foregoing reasons, the affidavits are not competent summary judgment evidence, and AISD's motion to strike will be granted.

---

[1] Estrella himself has not filed an affidavit.

5

B.   <u>National Origin Discrimination</u>

Title VII proscribes an employer from discharging or otherwise discriminating against any individual because of that individual's national origin.  42 U.S.C. § 2000e-2(a)(1).  The Title VII inquiry is "whether the defendant intentionally discriminated against the plaintiff."  <u>Roberson v. Alltel Info. Servs.</u>, 373 F.3d 647, 651 (5th Cir. 2004).  Intentional discrimination can be established through either direct or circumstantial evidence.  <u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 219 (5th Cir. 2001).  Because Estrella presents no direct evidence of discrimination, his claim must be analyzed using the framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973).  <u>Id.</u>[2]  Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing, by a preponderance of the evidence, a prima facie case of discrimination.  <u>Id.</u>

The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2106 (2000).  The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'"   <u>Id.</u>

_____

[2] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." <u>Sandstad v. C.B. Richard Ellis, Inc.</u>, 309 F.3d 893, 897 (5th Cir. 2002).

(quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 113 S. Ct. 2742, 2748
(1993)).  If the employer sustains its burden, the prima facie case
is dissolved, and the burden shifts back to the plaintiff to
establish either: (1) that the employer's proffered reason is not
true, but is instead a pretext for discrimination (pretext
alternative); or (2) the employer's reason, while true, is not the
only reason for its conduct, and another "motivating factor" is the
plaintiff's protected characteristic (mixed-motive alternative).
<u>Rachid v. Jack In The Box, Inc.</u>, 376 F.3d 305, 312 (5th Cir. 2004).
If the plaintiff "demonstrates that [his protected characteristic]
was a motivating factor in the [employer's decision to terminate
him], it then falls to the [employer] to prove 'that the same
adverse employment decision would have been made regardless of
discriminatory animus.'"  <u>Id.</u> (quoting <u>Mooney v. Aramco Servs. Co.</u>,
54 F.3d 1207, 1217 (5th Cir. 1995)).  If the employer fails to
carry this burden, the plaintiff prevails.  <u>Id.</u>[3]

1.  <u>Failure to Promote</u>

Estrella complains that he applied for and did not receive the
positions of corporal and sergeant.  Document No. 25 ex. 1, at 63.[4]

---

[3] Estrella pursues only the pretext line of argument on his
discrimination claims.

[4] The uncontroverted summary judgment evidence establishes that
Estrella's complaint of being "excluded from job openings" is
synonymous with (rather than distinct from) his complaint of being
"excluded from promotions"--the job opportunities at issue involved

7

These allegations, however, involve discrete actions that occurred more than 300 days before Estrella filed the EEOC charge giving rise to the instant case. *See* <u>id.</u> ex. 1, at 60.[5]   Accordingly, Estrella's Title VII claims arising from these allegations are time barred. *See* <u>Frank v. Xerox Corp.</u>, 347 F.3d 130, 136 (5th Cir. 2003)("A claimant must file a Title VII discrimination claim with the EEOC within 300 days of the challenged discrimination."). Although Estrella asserts in his Charge of Discrimination that the discrimination he experienced involved "continuing action," the "continuing violations" doctrine "extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 279 (5th Cir. 2004).   Estrella complains of discrete acts, not the "hostile work environment" to which the continuing violations doctrine may apply. *See* <u>id.</u> at 279-80; <u>Nat'l R. R. Passenger Corp.</u>

---

promotions. *See* Document No. 14 ¶ 10; No. 25 ex. 1, at 63.

[5] July 31, 2002, is 300 days before Estrella filed his May 27, 2003, Charge of Discrimination.   Estrella applied for the position of corporal between 1992 and 1995.   *See* Document No. 25 ex. 1, at 60.   Although Estrella testified that he twice applied for the position of sergeant "[b]etween 2000 and 2003," he could remember virtually nothing about the first application.   *See* <u>id.</u> at 52-54. The uncontroverted summary judgment evidence, however, pinpoints the second application to 2001.   *See* <u>id.</u> ex. 1, at 53-54; 56-57. ex. 2 ¶ 6.   Thus, both of Estrella's attempts to attain the position of sergeant occurred outside the requisite time period. Moreover, Fluellen ultimately declined to award the sergeant position to anyone after Estrella's "second" application. *See* <u>id.</u> ex. 2 ¶ 6.

v. Morgan, 122 S. Ct. 2061, 2073 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.").

2.   Adverse Employment Action

To establish a prima facie case of national origin discrimination, a plaintiff must show that he was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated.   Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005).

Although it is uncontroverted that Estrella is a member of a protected class who was qualified for his position, a number of his complaints do not involve adverse employment actions.  Estrella stated in deposition testimony that Fluellen "singled" him out by accusing him of being part of a clique with several black officers. *See* Document No. 25 ex. 1, at 36-37.  According to Estrella, Fluellen then got "on my case" by reassigning Estrella to the night shift and reassigning Estrella's days off.  *See* id. at 38, 41. Estrella contends that he was also singled out when he was written up for failing timely to follow up on an investigation, even though the officer whom he was assisting had said that Estrella's help was no longer needed in the case.  *See* id. at 43-44; ex. 8.  Although Estrella refers to the write-up as a "disciplinary" action, there

9

is no summary judgment evidence that the write-up actually affected Estrella's terms or conditions of employment. Quite to the contrary, Fluellen avers that with respect to the write-up, "[n]o disciplinary action was taken against Estrella." Id. ex. 2 ¶ 10.

The Fifth Circuit applies "a strict interpretation of the adverse employment element of [a plaintiff's] prima facie intentional discrimination case." Pegram, 361 F.3d at 282. Thus, an employment action that does not affect job duties, compensation, or benefits is not an adverse employment action. Id.; Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003). "Rather, an adverse employment action consists of 'ultimate employment decisions' such as hiring, granting leave, discharging, promoting, and compensating." Id. (quoting Felton v. Polles, 315 F.3d 470, 486 (5th Cir. 2002)(emphasis added).[6] Estrella neither argues nor presents summary judgment evidence that his reassignment or write-up involved any change in his job duties, compensation, or benefits. Thus, Estrella's reassignment and write-up do not constitute an actionable discrimination claim.

3.   Removal of Significant Job Responsibilities

Estrella contends that Fluellen discriminated against him by removing him from the position of gang investigator. See id. ex. 1, at 71. Assuming this constitutes an adverse employment

_____

[6] A demotion also qualifies as an adverse employment action. See Pegram, 361 F.3d at 282.

10

action, AISD has presented a legitimate, non-discriminatory reason for its action. When Fluellen became AISD's chief of police, he decided not to have patrol officers assigned to specialized units. *See* id. ex. 2 ¶ 11. Estrella presents no summary judgment evidence that Fluellen's actions were pretextual. Indeed, Estrella could not recall any reasons why his "removal" from being a gang investigator and gang coordinator would have been a pretext for national origin discrimination. *See* id. ex. 1, at 75. Furthermore, the officer who Estrella believes was assigned to his former gang investigator "position," Oscar Muniz, is also Hispanic. *See* id. at 71.[7]

Additionally, Estrella asserts that he was discriminated against because he was required to undergo additional paid field training officer ("FTO") instruction under Fluellen, but was not then allowed to train new recruits. *See* id. at 77. Estrella never argues, however, that training recruits was or was intended to be part of his regular job duties. Moreover, the uncontroverted

---

[7] Estrella also complains that Muniz was allowed to attend a "gang conference" instead of him (Estrella). *See* Document No. 25 ex. 1, at 80, 82. Fluellen, however, avers that this was because Muniz had not had the opportunity to attend and Estrella had attended the conference for many years. *See* id. ex. 2 ¶ 11. Again, Estrella presents no summary judgment evidence that this legitimate, non-discriminatory reason was merely a pretext for national origin discrimination. Estrella further complains that he was not allowed to continue a gang-related program he co-founded, but admitted that the five-year grant under which the program operated ended between 1999 and 2001. *See* id. ex. 1, at 82. Thus, this claim is time barred.

11

summary judgment evidence is that even with the additional FTO training, Fluellen did not think that Estrella was capable of training recruits. *See* id. ex. 2 ¶ 12. Ultimately, when asked whether he (Estrella) had "any specific information or instances that you can recall" that would lead him to believe that the foregoing responsibilities were removed because of his national origin, Estrella responded: "There may have been but I can't remember at this time." Id. ex. 1, at 87. Accordingly, AISD is entitled to summary judgment on these claims.

### 4. Termination

As explained above, Estrella resigned "in lieu of termination" after being confronted about passing his personal phone number to a young woman who identified herself as a student at an AISD school. *See* id. at 105, 108.[8] For purposes of summary judgment, AISD concedes that Estrella's resignation--which was apparently prompted by Fluellen's warning that he would have to terminate Estrella--constituted an adverse employment action. However, AISD produces a legitimate, non-discriminatory reason for the forced resignation--Estrella's violation of AISD's sexual harassment policy. *See* id. ex. 5. Estrella does not deny that he violated

---

[8] Although Estrella claims in his deposition testimony that he did not know the woman was a *high school* student, his signed statement of April 8, 2003, recites that the young woman stated that she attended a school in the Aldine district. *See* Document No. 25 ex. 1, at 108; ex. 4.

the policy, and presents no summary judgment evidence that AISD's actions were pretextual or otherwise motivated by national origin. When asked why he thought his resignation was tied to his national origin, Estrella stated "I don't know." Document No. 1, at 117. AISD is therefore entitled to summary judgment on this claim.

C.   <u>Retaliation</u>

Title VII declares it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  As Estrella presents no direct evidence of retaliation, he must, as with his national origin discrimination claim, proceed under the <u>McDonnell Douglas</u> burden shifting scheme. *See* <u>Septimus v. Univ. of Houston</u>, 399 F.3d 601, 607-09 (5th Cir. 2005); <u>Fabela v. Socorro Indep. Sch. Dist.</u>, 329 F.3d 409, 414-15 (5th Cir. 2003).  To make a prima facie case of retaliation, Estrella must show (1) that he engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action.  *See* <u>Septimus</u>, 399 F.3d at 610.

The uncontroverted summary judgment evidence is that Estrella believes AISD retaliated against him by, after his resignation,

13

saying things to potential future employers about the circumstances surrounding his departure that deprived him of job offers. *See* Document No. 25 ex. 1, at 89, 91-92. However, Estrella cannot establish a prima facie case of retaliation. He presents no summary judgment evidence of a "protected activity" that served as the basis for AISD's alleged retaliation. Estrella does not tie his filing of his EEOC charge to AISD's actions, and appears to have found new employment by the time he filed the EEOC charge. *See* id. at 29; 105. Moreover, Estrella conceded in deposition testimony that he did not know what AISD said to the inquiring employers. *See* id. at 91, 105.[9] Finally, Estrella's opposition to AISD's motion for summary judgment focuses on his termination, and makes no attempt to defend his retaliation claim. Accordingly, Estrella's retaliation claim will be dismissed on summary judgment.

## IV.  Order

For the reasons set forth, it is hereby

ORDERED that Defendant Aldine Independent School District's Motion to Strike Affidavits (Document No. 30) is GRANTED, and the affidavits of Alfred Herdon and Gerald Trent Eagleton are STRICKEN. It is further

---

[9] In fact, the uncontroverted summary judgment evidence is that Fluellen received a reference call from only one police department. *See* Document No. 25 ex. 2 ¶ 13. Fluellen avers that he "gave Estrella a neutral reference and stated that he would do a good job." Id.

ORDERED that Defendant Aldine Independent School District's Motion for Summary Judgment (Document No. 25) is GRANTED, and Plaintiff Jesus G. Estrella's claims against Defendant Aldine Independent School District are DISMISSED.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 26th day of May, 2005.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

15